MARK A. SCOGGINS
SCOGGINS LAW OFFICE, LLC
2nd Floor, MIC Building, Chalan Monsignor Guerrero
San Jose Village
P.O. Box 501127
Saipan, MP 96950-1127
Telephone Nos.: (670) 234-7455 / 7427
Facsimile No.:    (670) 234-7256
Email: scogginslawoffice@gmail.com
        markascoggins@gmail.com

Attorney for the Defendant.

**THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No.1:25-CR-00014 |
| Plaintiff, | |
| vs. | **SENTENCING MEMORANDUM** |
| VENERANDO MARTIN, | |
| Defendant. | |

Defendant Venerando Martin hereby offers the following sentencing memorandum:

**Legal Standards for Sentencing.**

1.      The U.S. Sentencing Guidelines are the starting point for any sentencing in the U.S. District Courts.  See *Gall v. United States*, 552 U.S. 38, 49 (2007) citing *Rita v. United States*, 551 U.S. 338, 347-348 (2007).  "The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [factors contained in 18 U.S.C. §3553(a)] to determine whether they support the sentence requested by a party." *Id*. At 49-50.  An abuse of discretion standard would be applied "...to all sentencing decisions, whether inside or outside the guidelines range." *Id*., at 49. The District Judge "...must adequately explain the chosen sentence... to promote the perception of fair sentencing." *Id*., at 50 citing *Rita* at 356-358.

2.      18 U.S.C. §3553(a) requires the Court to

...impose a sentence sufficient, but not greater than necessary...

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

( C)to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

The Ninth Circuit has stated that

Following *Booker*, we held that district courts, employing factors listed under § 3553(a), 'have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed not ordinarily relevant, such as age, education and vocational skills, mental and emotional conditions, employment record and family ties and responsibilities.'

*United States v. Rangel*, 697 F. 3d 795, 803 (9th Cir. 2012) quoting *United States v. Menyweather*, 447 F. 3d 625, 634 (9th Cir. 2006); quoting *United States v. Ameline*, 409 F.3d 1073, 1093 (9th Cir. 2005) overruled on other grounds as recognized by *United States v. Munoz-Camarena*, 621 F.3d 967, 969 (9th Cir. 2010).

**Mr. Martin "Just Tried" When He Learned About the "C16" EAD Category.**

3.    When Mr. Martin came before the Court for his initial appearance, he was asked about his education and so the Court found out that Mr. Martin is a person who is always trying to learn new things. As explained in the PSIR, Mr. Martin holds certifications in Security / Police Sciences, Basic Computer Operations, Basic Japanese, Auto Mechanics, Domestic Refrigeration and Aircon Mechanics, Basic Auto Theory, Automotive Brake Theory, and Computer Programming. (ECF 22 at ¶123.)  It seems he is a person who is always trying to improve himself, and he probably could have made positive contributions to our community if he had only had the legal ability to get himself a job.

4.    This problem weighed heavily on Mr. Martin, and in addition to the many certificate courses he had taken, he spent a lot of time on the internet trying to find ways to solve the problem of his legal status in the CNMI.  Through this, he learned about the possibility of obtaining an EAD through applying in the C16 category, a category only meant for people who have been continuously present in the United States since before January 1, 1972.  To other people, including likely the Court, the idea that Mr. Martin, a person born in 1970 who never set foot on Saipan until 2000, could get

*Venerando Martin Sentencing Memo - Page 2 of 4*

approval for an EAD is absurd.   For Mr. Martin, however,  he saw down some rabbit hole on the internet that somehow convinced him that it could work, and so he "just tried."  (ECF 22, at ¶65.)   It did work, and he then "just tried" to do the same thing for others.  Further, because it worked for Mr. Martin, and because USCIS approved it, it seems that Mr. Martin convinced himself that it must be okay.

5.      "Just tried" is a phrase that the undersigned heard several times from Mr. Martin as we discussed his case and the charges against him. Mr. Martin was very forthcoming when he sat for his custodial interview with HSI.  He told them everything without hesitation.  It seems very possible he did not know at the time that his conduct had been criminal.

6.      Mr. Martin's conduct does meet the elements of the crime to which he pled guilty, including the *mens rea*, and he does understand that now.  When speaking and explaining the situation and the elements of his crime, however, it was at first difficult to help him understand that he had committed crimes by "knowingly... [obtaining, accepting, or receiving] [documents] ...prescribed by statute or regulation for entry into or as evidence of authorized... employment in the United States, knowing [them]... to have been procured by means of any false claim or statement.... 18 U.S.C. 1546(a). Mr. Martin's conduct meets the *mens rea* under the statute because he knew he had obtained the EAD documents, and he knew that none of the people for whom he applied, some of whom weren't yet born in 1972, had not been in the United States for the required period of time.  This doesn't change the fact that until this was explained to him, in detail and through more than one meeting, Mr. Martin had "just tried" to do something that he had learned about on the internet.   This is all by way of explanation, not excuse.

**The Collateral Consequences to Mr. Martin Are Extreme.**

7.      This case is very sad.  Mr. Martin is the father of a thirteen-year-old U.S. citizen daughter. (ECF 22, ¶116.)  As such, he had a path to Legal Permanent Resident Status.  If he and the girl's mother could have just held on and kept themselves from being removed for a few more years, Mr. Martin and his partner could have applied for green cards when their daughter turned twenty-one. For Mr. Martin, this criminal conviction means that he has lost that chance forever.  He will be removed

after his sentence, and he will be permanently barred from reentry. Justice Robert Jackson once wrote in a dissenting opinion that deportation following a criminal conviction means that the non-citizen "is punished with a life sentence of banishment in addition to the punishment which a citizen would suffer for the identical acts." *Jordan v. De George*, 341 U.S. 223, 232 (1951) (Jackson, J. dissenting). Likely removal or deportation can be a factor for granting a variance under the guidelines as deportation can "make... incarceration more onerous." *United States v. Doganyan*, 2020 U.S. Dist. LEXIS 90825, at *3 (C.D. Cal. Apr. 29, 2020).

8.     For Mr. Martin, the situation seems much worse.  His partner, who departed Saipan after this case began, has lost her own  chance for a green card for at least ten years.  Also, the daughter will stay behind without her parents on Saipan.  This matter has completely broken up this family, and this is a significant punishment.

9.     Though not related as a consequence of his crimes, Mr. Martin has been severely punished in other ways.  His residence was seriously damaged by Typhoon Sinlaku.  Mr. Martin a few weeks ina shelter, and he now lives in a tent.  He has also had a very difficult life. (ECF 22, ¶¶112-114.)

**A Low Sentence Is Warranted for Mr. Martin.**

10.     The guideline range for imprisonment In this case is 18 to 24 months.  (ECF 22, ¶128.) Under JSIN, the average length of imprisonment 14 months, and the median is 18 months.  A sentence on the low end of the guidelines, or even a below guidelines variance would be sufficient to meet the goals of sentencing in this matter.  Mr. Martin has basically lost everything already.

Respectfully submitted May 20, 2026.

_____/s/_____
MARK A. SCOGGINS
Attorney for Venerando Martin